IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| STRAGENT, LLC and SEESAW FOUNDATION, | § § § § | |
| Plaintiff, | § § | CASE NO. 6:10cv225 LED-JDL |
| vs. | § § | JURY DEMANDED |
| AMAZON.COM, INC., et al., | § § | |
| Defendants. | § § § | |

# MEMORANDUM OPINION AND ORDER

This claim construction opinion construes the disputed claim terms in U.S. Patent No. 6,832,226 ("the '226 patent"). Plaintiffs Stragent, LLC and Seesaw Foundation (collectively, "Stragent") alleges Amazon.com, Inc. ("Amazon") infringes the '226 patent. The parties have presented their claim construction positions (Doc. Nos. 152, 164 & 171). On May 19, 2011, the Court held a claim construction hearing and heard further argument. The Court issued a provisional claim construction order on May 23, 2011. (Doc. No. 180). For the reasons stated herein, the Court adopts the constructions set forth below.

## OVERVIEW OF THE PATENT

The '226 patent is directed toward the creation of a web-based database application using a data dictionary. '226 patent at 1:7-9. The patent claims that the use of a data dictionary eliminates the need for a programmer or web-developer, thereby reducing the cost and time associated with creating a web-based database application. *See* '226 patent at 1:37-47. A data dictionary may

contain information about any of the following:

> (1) the web application's database structure (tables, fields, indices, and relationships), (2) database characteristics (required fields, field masks, etc.), and (3) the web application's components (menus, forms, reports, export formats, etc.). It may also contain information relating to (4) the text or images that are displayed on web forms and menus (for buttons, captions, labels, form titles, messages, etc.), (5) the fonts and colors used to display text on the web forms, (6) the location where the various items are to be displayed on the form, and (7) programming code that is to be executed when the web application is run.

'226 patent at 1:14-26.

Claim 49 of the '226 patent is set forth below as a representative claim with disputed claim terms set forth in bold:

> 49. A network-based database system comprising:
> a network interface adapted to receive **application data**, wherein said application data contains **data items** and does not contain **information regarding the structure and/or organization of said data items**;
> an **engine** for determining and storing in a data dictionary the structure and/or organization of the data items of said application data received via said network interface;
> an engine for building and/or updating and/or running an application, said application comprising at least one **non-static application page**; and
> storage for said received application data and said at least one non-static application page;
> wherein said engine for building and/or updating and/or running said application employs said determined structure and/or organization of the data items stored in said data dictionary and at least a portion of the data items of said application data to build and/or update and/or ran said at least one non-static application page;
> wherein said data dictionary contains at least information regarding the presentation of said data items on said non-static application page; and
> wherein said database system is adapted to permit a user to provide application data by at least one method selected from the group consisting of: uploading a file, creating an application from a template, entering structure and/or organization information of said data items on a form in a **network-based computer application**, and

> entering structure and/or organization information of said data items
> on a form in a web browser or a network-based computer application.

'266 patent at 14:20-53 (Claim 49).

## CLAIM CONSTRUCTION PRINCIPLES

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The Court examines a patent's intrinsic evidence to define the patented invention's scope. *Id.* at 1313-1314; *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). Intrinsic evidence includes the claims, the rest of the specification and the prosecution history. *Phillips*, 415 F.3d at 1312-13; *Bell Atl. Network Servs.*, 262 F.3d at 1267. The Court gives claim terms their ordinary and customary meaning as understood by one of ordinary skill in the art at the time of the invention. *Phillips*, 415 F.3d at 1312-13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

Claim language guides the Court's construction of claim terms. *Phillips*, 415 F.3d at 1314. "[T]he context in which a term is used in the asserted claim can be highly instructive." *Id.* Other claims, asserted and unasserted, can provide additional instruction because "terms are normally used consistently throughout the patent." *Id.* Differences among claims, such as additional limitations in dependent claims, can provide further guidance. *Id.*

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single

best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp.v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex. Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). In the specification, a patentee may define his own terms, give a claim term a different meaning that it would otherwise possess, or disclaim or disavow some claim scope. *Phillips*, 415 F.3d at 1316. Although the Court generally presumes terms possess their ordinary meaning, this presumption can be overcome by statements of clear disclaimer. *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343-44 (Fed. Cir. 2001). This presumption does not arise when the patentee acts as his own lexicographer. *See Irdeto Access, Inc. v. EchoStar Satellite Corp.*, 383 F.3d 1295, 1301 (Fed. Cir. 2004).

The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. For example, "[a] claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct." *Globetrotter Software, Inc. v. Elam Computer Group Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004) (quoting *Vitronics Corp.*, 90 F.3d at 1583). But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed language in the claims, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988); *see also Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patentee may define a term during prosecution of the patent. *Home Diagnostics Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent

4

applicant may define a term in prosecuting a patent"). The well established doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). The prosecution history must show that the patentee clearly and unambiguously disclaimed or disavowed the proposed interpretation during prosecution to obtain claim allowance. *Middleton Inc. v. 3M Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002). "Indeed, by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover." *Spectrum Int'l v. Sterilite Corp.*, 164 F.3d 1372, 1378-79 (Fed. Cir. 1988) (quotation omitted). "As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution." *Omega Eng'g, Inc.*, 334 F.3d at 1324.

Although, "less significant than the intrinsic record in determining the legally operative meaning of claim language," the Court may rely on extrinsic evidence to "shed useful light on the relevant art." *Phillips*, 415 F.3d at 1317 (quotation omitted). Technical dictionaries and treatises may help the Court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but such sources may also provide overly broad definitions or may not be indicative of how terms are used in the patent. *Id.* at 1318. Similarly, expert testimony may aid the Court in determining the particular meaning of a term in the pertinent field, but "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful." *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

The patent in suit may contain means-plus-function limitations that require construction.

5

Where a claim limitation is expressed in means-plus-function language and does not recite definite structure in support of its function, the limitation is subject to 35 U.S.C. § 112 ¶ 6. *Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997). In relevant part, § 112 mandates that "such a claim limitation be construed to cover the corresponding structure . . . described in the specification and equivalents thereof." *Id.* (citing 35 U.S.C. § 112 ¶ 6. ). Accordingly, when faced with means-plus-function limitations, courts "must turn to the written description of the patent to find the structure that corresponds to the means recited in the [limitations]." *Id.*

Construing a means-plus-function limitation involves two inquiries. The first step requires "a determination of the function of the means-plus-function limitation." *Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1311 (Fed. Cir. 2001). Once a court has determined the limitation's function, "the next step is to determine the corresponding structure disclosed in the specification and equivalents thereof." *Medtronic*, 248 F.3d at 1311. A structure is corresponding "only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." *Id*. Moreover, the focus of the corresponding structure inquiry is not merely whether a structure is capable of performing the recited function, but rather whether the corresponding structure is "clearly linked or associated with the [recited] function." *Id*.

## DISCUSSION

The terms in dispute, and their corresponding constructions, are set forth below.

### I. "application data"[1]

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|

---

[1] This term is contained in Claims 37, 38, 41, 43, 47, 49, 50, 53, 55, 61 and 62.

| data items that may include structure and/or organization information of said data items[2] | a file comprising at least data items and may also include information regarding the structure and/or organization of said data items |

The parties primarily dispute whether application data is limited to one or more files. RESPONSE AT 5. Stragent argues that the specification describes application data as "electronic data" or "electronic information," but does not limit application data to a file or files. PLTFFS' BRIEF AT 7; REPLY AT 1. Further, Stragent argues that by requiring that a data dictionary and a non-static application page be built from a single file, Amazon's proposed construction excludes a preferred embodiment of the '226 patent. PLTFFS' BRIEF AT 8.

Amazon, on the other hand, contends that application data is contained in one or more files, citing to portions of the specification for support. RESPONSE AT 6. Amazon further asserts that Stragent's proposed construction implies that "structure and/or organization information" is a subset of "data items." *Id.* at 7. Amazon contends that "data items" and "structure and/or organization information" are not only exclusive of one another, but are included within the broader category of "application data." *Id.*

"Data items" and "structure and/or organization information" are distinct subsets of "application data." Claim 61 recites that "application data contains at least data items." '226 patent at 15:39-40. The claim further states that "if said application data does not contain structure and/or organization information of said data items . . . ," indicating that (1) data items are separate from the structure and/or organization information regarding those data items; and (2) application data can include both data items and structure and/or organization information. *See* '226 patent at 15:41-42;

---

[2] This proposal was offered at the *Markman* hearing on May 19, 2011.

7

*see also* '226 patent at 16:17-18; 16:23-25. In addition, during prosecution, the applicant explicitly stated that data items were distinct from structure and/or organization information:

> Specifically, the *two-fold nature* of the application data has been clarified; the claims now *clearly state that the application data may include both (1) data items (actual data) and (2) information regarding the structure and/or organization of the data items*.

EX. 3 ATTACHED TO RESPONSE AT STRA_0001416 (emphasis added). Therefore, data items are not structure and/or organization information and both are types of application data.

Turning to the primary dispute between the parties, Stragent is correct that application data is not limited to a file. Claim 62 states a user may "provide application data by at least one method selected from the group consisting of: uploading a file . . . and entering structure and/or organization information of said data items on a form in a web browser or a network-based computer application." '226 patent at 16:43-51. The claim explicitly states that application data may be provided via a web browser. If application data were limited to one or more files, the method of providing application data via a web browser would be excluded because a web browser is not a file.[3]

Amazon contends that although the methods referred to in the portion of the specification cited above recite that structure and/or organization information may be uploaded using a web browser, data items may not be provided in the same manner. DFTS' SLIDES AT 19. Rather, data items must be contained in a file. *Id.* Looking to Claim 41, however, the patent discloses that

---

[3] A web browser is "[a] program, such as Netscape Navigator and Internet Explorer, that allows the user to access hypertext links to different sites on the World Wide Web." AMERICAN HERITAGE DICTIONARY OF COMPUTER WORDS 293 (1998). A file is defined as:
> A collection of data or information that is stored as a unit in the computer under a single name, called the file name. Files are the basic units that a computer works with in storing and retrieving data. Although a single file is often scattered across many places on a hard disk, the computer retrieves all the pieces and makes them available as a single entity.

*Id.*

"application data is received through a web browser or a network-based computer application." '226 patent at 13:54-56. Claim 41 depends on Claim 37, which recites "wherein said application data contains data items and does not contain information regarding the structure and/or organization of said data items." '226 patent at 13:13-16. Thus, Claims 37 and 41 disclose that data items may be received through a web browser. Therefore, Amazon's argument fails because the '226 patent contemplates application data in forms other than a file.

Further, nothing in the specification precludes application data from being anything other than a file. Application data may be "electronic data" or "electronic information [that] can be *in many forms*, including PC-based databases (e.g., Microsoft's Access, FoxPro, dBase, Paradox, etc.), spreadsheets, and text files." '266 patent at 2:36 and 4:49-51 (emphasis added).

Accordingly, the Court construes the term "application data" as "data items that may include structure and/or organization information of said data items."

## II. "engine"[4]

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|
| software module | This term is governed by 35 U.S.C. 112, paragraph 6. |
| | Further, no "corresponding structure, material, or acts" or their equivalents are described in the specification of the '226 patent. |
| | Accordingly, this term is indefinite and incapable of construction. |

The parties dispute whether the term "engine" should be governed under 35 U.S.C. § 112 ¶ 6 and further, whether the term is indefinite. RESPONSE AT 9. Stragent argues that an "engine" is

---

[4] This term is contained in Claims 49, 54 and 62.

known to one of ordinary skill in the art as a software module. PLTFFS' BRIEF AT 10. According to Stragent, the specification refers to "engines" as programs that "read[] electronic data and update[] the data dictionary with information about the database structure and requirements." *Id.* (citing the '266 patent at 2:39-41). Because even the Examiner understood "engine" to mean a software module, Stragent concludes the term "engine" is definite. *See id.* at 12. Further, because the claims do not include the word "means," there is a strong presumption that § 112 ¶ 6 does not apply. *Id.* at 8.

Amazon responds, arguing that the "engine for" claims are purely functional and should be construed under 35 U.S.C. § 112 ¶ 6. RESPONSE AT 9. Amazon further contends that the term "engine" does not connote sufficient structure to satisfy § 112 ¶ 6, nor does the '226 patent recite algorithms that perform the recited functions. *Id.* Thus, Amazon asserts that the "engine for" terms fail to satisfy § 112 ¶ 6 and are therefore indefinite. *Id.*

The Court will not construe the "engine" elements as means-plus-function terms. The claims reciting engines do not claim a "means for" performing a function, which raises a presumption against construing the "engine" claims under § 112 ¶ 6. *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1358 (Fed. Cir. 2004); *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1369 (Fed. Cir. 2002) ("[A] claim term that does not use 'means' will trigger the rebuttable presumption that § 112 ¶ 6 does not apply."). The fact that the claims define "engine" in functional terms does not overcome the presumption that § 112 ¶ 6 should not apply. *See Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996) ("[T]he fact that a particular mechanism . . . is defined in functional terms is not sufficient to convert a claim element containing that term into a 'means for performing a specified function' within the meaning of section 112(6).");

*Affymetrix, Inc. v. HYSEQ Inc.*, 132 F. Supp. 2d 1212, 1231 (N.D. Cal. 2001).

The Federal Circuit has "looked to the dictionary to determine if a disputed term has achieved recognition as a noun denoting structure, even if the noun is derived from the function performed." *Lighting World*, 382 F.3d at 1360-61; *see also Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1320 (Fed. Cir. 2004) (looking to technical dictionaries to determine whether "circuit" connotes structure). As implied above, the term "engine" conveys structure to one of ordinary skill in the art. Not only did the Examiner acknowledge that an engine is a "software application" or software module, but Amazon apparently agrees, quoting *The Dictionary of Multimedia* 104 (1999), which states that an engine "[i]n software, [is] a program (such as a database engine or search engine) that performs a function . . . ." *See* PLTFFS' BRIEF AT 12; RESPONSE AT 11, n.13. Thus, because the term "engine" is understood to be a software program, § 112 ¶6 does not apply.

Therefore, the Court finds the proper construction of the term "engine" is "software program."

## III. "non-static application page"[5]

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|
| code from which a web application page that displays data items can be dynamically built | computer program that is dynamically generated based on information in the data dictionary[6] |

At the hearing, the parties generally agreed to the construction "dynamically generated code from which a web page can be built based on information in the data dictionary." Amazon, however, argued that the word "program" should be included to modify "code." Amazon asserts that

---

[5] This term is contained in Claims 37, 39, 42, 49, 51, 53 and 60-62.

[6] This proposal was offered at the *Markman* hearing on May 19, 2011. DFT'S SLIDES AT 35.

normally, a static page script—a programming element—is used to update or produce a web page. Therefore, when one wants to change the look of a web page, a programmer usually is needed to amend the page script. Yet, the point of novelty of the '226 patent is to automatically generate a web page based on updates to the data dictionary. Thus, Amazon asserts, the page script must be dynamically generated. Amazon contends that the word "program" merely modifies "code" to express that the type of code dynamically generated is programming code, namely a page script.

Stragent opposes the addition of the word "program" to modify "code" because it improperly implies an intermediate programming step between the engine building, updating, or running a non-static application page and the production of a web page. Stragent contends that the plain language of the claims merely disclose an engine and a non-static application page; the claims do not disclose any kind of intermediate programming step such as a page script.

Claim 49 recites "[a] network-based database system" that does not include a page script to generate a web page. It merely states, in relevant part, "an engine for building and/or updating and/or running an application, said application comprising at least one non-static application page." '226 patent at 14:29-31. The claim thus discloses that the "engine builds, updates or runs at least one non-static application page." *See* EX. 3 ATTACHED TO RESPONSE AT STRA_0001416. Because the claims do not recite any intermediate programming step or structure between the engine and the creation of a non-static application page, Amazon's argument lacks merit.

Accordingly, the Court finds the term "non-static application page" means "dynamically generated code from which a web page can be built based on information in the data dictionary."

## IV. "data items"[7]

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction necessary | information contained or to be contained within a record of an application database |

Aside from the dispute of whether the term "data items" needs construction, the parties disagree as to how the "data items" are stored. *See* RESPONSE AT 22-23. Specifically, Amazon argues that "data items" are "stored in an application database," and further, that such "data items" are "contained or to be contained within a record." *Id.*; DFTS' SLIDES AT 22. Amazon's proposed construction seems directed toward the idea that "data items" are "the actual, raw data within a record of a database that is separate and apart from structure and/or organization information." RESPONSE AT 24.

Stragent, however, asserts that the term "data items" needs no construction. PLTFFS' BRIEF AT 17. Stragent contends that the '226 patent generally discusses electronic data and that lay jurors will understand the plain meaning of "data items." *Id.* Stragent further argues that Amazon's proposed construction is overly limiting, narrowing claims that do not require storage, such as Claims 25 and 37. *Id.* In addition, Stragent contends that just as "application data" need not be limited to a file, "data items" are not limited to records. REPLY AT 8-9.

To address Amazon's argument that data items are stored in an application database, the Court looks to Claim 55. Claim 55 states "A system as claimed in claim 49,[8] wherein said storage

---

[7] This term is contained in Claims 37, 38, 43, 49, 50, 55, 61 and 62.

[8] Claim 49 recites, in relevant part, "storage for said received application data and said at least one non-static application page." '226 patent at 14:32-33.

13

for the data items of said received application data comprises a database." '226 patent at 15:12-14. Because Claim 55 expresses additional limits on how data items are stored, Claim 49 does not require that data items be stored in a database. *See Phillips*, 415 F.3d at 1315 ("[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim."). Further, dependent Claim 43 discloses "storing the data items of said received application data in a database," even though independent Claim 37 does not recite any storage limitations with respect to data items. '226 patent at 13:62-64; 13:11-37. Thus, the claim language does not require that "data items" be stored in an application database.

Turning to the remainder of Amazon's argument, the Court finds that its conclusion that "data items" are separate from "structure and/or organization information" resolves the parties' dispute about the scope of "data items." *See* SECTION I. Amazon argues that "each row of Figure 8B is a 'record' and the intersection of each row and column are the 'data items' (or actual data)." RESPONSE AT 23. Amazon later cites a portion of the prosecution history to note that "data items are the actual raw data that are separate and apart from other information in the record." *Id.* at 24. Thus, it seems that the crux of Amazon's proposed construction is directed to pointing out the distinction between "data items" and "structure and/or organization information." Because the Court has concluded that "data items" are distinct from "structure and/or organization information," it finds that to further construe "data items" would be needlessly confusing.

Having resolved the parties' dispute as to the scope of the term "data items," the Court finds that no construction is necessary. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).

## V.     "network-based computer application"[9]

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|
| a computer application capable of receiving data via a network[10] | a computer application capable of receiving or transmitting data via a network |

The parties dispute whether the term "network-based computer application" requires the ability to transmit data and whether the construction, if any, compels an explanation that the network-based computer application receives data. Stragent argues that the term need not be construed because (1) the claim language already requires that the network-based computer application receive data; and (2) neither the specification nor the claims require that the network-based computer application be capable of also transmitting data. PLTFFS' BRIEF AT 18.

Amazon, on the other hand, argues that the network-based computer application is required to transmit data. RESPONSE AT 27. Claim 53 states, "said network interface is adapted to transmit at least one said non-static application page to a user and/or receive said application data trough [*sic*] a web browser or a network-based computer application." '266 patent at 15:1-5. According to Amazon, Claim 53 "states that the 'network interface' receives application data from the network-based computer application—thus the network-based computer application is sending (*i.e.*, transmitting) that application data." RESPONSE AT 27-28.

Amazon's proposed construction, however, undercuts its own argument. Amazon proposes that the term "network-based computer application" means "a computer application capable of receiving *or* transmitting data via a network." *Id.* at 27. Using "or" provides an option of "receiving

---

[9] This term is contained in Claims 37, 41, 42, 49, 53, 54, 61 and 62.

[10] Plaintiffs offered this proposal at the *Markman* hearing on May 19, 2011.

or transmitting," which inherently does not require that the "network-based computer application" receive *and* transmit data. Further, Amazon admits that the word "transmit" in Claim 53 does not modify "network-based computer application." *Id.* If Amazon's interpretation of Claim 53 were correct, it would render the transmission requirement in dependent Claim 53 moot by also requiring transmission of data by the more general "network-based computer application" recited in independent Claim 49. *Id.* The doctrine of claim differentiation dictates a presumption that the "network-based computer application" disclosed in independent Claim 49 does not require the capability to transmit data because the dependent claim adds such a limitation. *See Phillips*, 415 F.3d at 1315; *Retractable Techs. v. New Med. Techs.*, 2004 U.S. Dist. LEXIS 3855, at *48-49 (E.D. Tex. Mar. 3, 2004). Thus, the term "network-based computer application" does not require the capability to transmit data.

Because the parties agree that a network-based computer application is capable of receiving data, PLTFFS' BRIEF AT 18; RESPONSE AT 28, the construction for the term "network-based computer application" is "a computer application capable of receiving data via a network."

## VI. "information regarding structure and/or organization of said data items" / "structure and/or organization information of said data items"[11]

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction necessary | information regarding the manner in which data items are structured and/or organized |

The parties' primary dispute concerns whether "structure and/or organization information" "is separate and apart" from "data items." *See* RESPONSE AT 29. As stated above, the Court has

---

[11] These terms are contained in Claims 37, 49, 61 and 62..

determined that "data items" are distinct from "structure and/or organization information." *See* SECTIONS I & IV. However, the Court finds it will likely be helpful to the lay juror to construe "information regarding structure and/or organization of said data items" and "structure and/or organization information of said data items" to clarify that data items are separate from structure and/or organization information.

The specification discloses that structural and/or organization information is information describing how data items are organized:

> A second program on the website reads the electronic data and updates the data dictionary with information about the database structure and requirements (e.g., table names and properties, field names and properties, index names and properties, relationships among the tables, etc).

'226 patent at 2:39-44; *see also* '226 patent at 5:8-20. Accordingly, the proper construction for the terms "information regarding structure and/or organization of said data items" and "structure and/or organization information of said data items" is "information regarding the manner in which data items are structured and/or organized."

## CONCLUSION

For the foregoing reasons, the Court adopts the constructions set forth above.

**So ORDERED and SIGNED this 7th day of June, 2011.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE